### John W. BUCK, Plaintiff,

v.

### Jo Anne B. BARNHART,[1] Commissioner of the Social Security Administration, Defendant.

### No. CIV.A. 01–2258–DJW.

United States District Court, D. Kansas.

Dec. 9, 2002.

---

Joan H. Deans, J. H. Deans Law Office, Raytown, MO, for Plaintiff.

Melanie D. Caro, Robert A. Olsen, Office of United States Attorney, Kansas City, KS, for Defendant.

**2.** *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994).

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of Defendant Commissioner of the Social Security Administration (Commissioner) denying his applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, as amended. The parties have filed their consent to jurisdiction by Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1) and Fed.R.Civ.P. 73 (doc. 10). Plaintiff has filed a Memorandum in Support of Motion for Judgment (doc. 7) seeking judicial review of the Commissioner's decision. The Commissioner has filed a brief in opposition (doc. 9).

The Court has reviewed the administrative record and the briefs of both parties. As set forth below, the Court affirms the decision of the Commissioner.

### I. Standard of Review

 Pursuant to 42 U.S.C. § 405(g), a court may render "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.[2] The Supreme Court has held that "substantial evidence" is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] In reviewing the record to

**3.** *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

determine whether substantial evidence supports the Commissioner's decision, the court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner.[4] Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.[5] Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.[6] This determination entails a review of "the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision."[7] Evidence is not considered substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion."[8]

The court also reviews the decision of the Commissioner to determine whether the Commissioner applied the correct legal standards.[9] The Commissioner's failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis.[10] The court thus reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied.[11]

## II. Procedural History

Plaintiff filed his applications for disability insurance benefits and supplemental security income benefits on May 26, 1999 and June 10, 1999, respectively. (*See* Certified Tr. of the Record at 55–57, 237–39, doc. 3, hereinafter referred to as Tr.) In both applications, he alleges that he became disabled and unable to work on January 28, 1999. (Tr. 55, 237) The Commissioner denied the claims initially and upon reconsideration. (Tr. 31–36, 40–44)

On January 13, 2000, the Administrative Law Judge (ALJ) conducted a hearing on Plaintiff's claim. (Tr. 257–304) Plaintiff appeared in person with his attorney, Joan H. Deans. (Tr. 259)

On April 11, 2000, the ALJ issued his decision in which he concluded that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to receive disability insurance and supplemental security income benefits. (Tr. 22) In reaching this conclusion, the ALJ determined that Plaintiff's impairments did not prevent him from performing his past relevant work as a hotel night auditor. (Tr. 20) The ALJ, therefore, concluded that Plaintiff was not disabled at step four of the Commissioner's five-step sequential evaluation process for determining disability.

On May 12, 2000, Plaintiff requested a review of the hearing decision by the Ap-

---

4. *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir.2000) (citing *Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991)).

5. *Graham v. Sullivan,* 794 F.Supp. 1045, 1047 (D.Kan.1992).

6. *Holloway v. Heckler,* 607 F.Supp. 71, 72 (D.Kan.1985).

7. *Vogt v. Chater,* 958 F.Supp. 537, 538 (D.Kan.1997).

8. *Knipe v. Heckler,* 755 F.2d 141, 145 (10th Cir.1985) (quoting *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983)).

9. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994); *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir.1994).

10. *Glass,* 43 F.3d at 1395 (citing *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993)).

11. *Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497 (10th Cir.1992).

peals Council (Tr. 8–10), which was denied by the Appeals Council on March 30, 2001. (Tr. 6–7) Thus, the findings of the ALJ stand as the final decision of the Commissioner in this case.

## III. Factual Summary

At the time of the hearing before the ALJ, Plaintiff was 45 years of age. (Tr. 115) Under the social security regulations, this is classified as a "younger" individual.[12] Plaintiff has a high school education but no other formal education or training. (Tr. 32, 263) His past relevant work includes working as a courier, deliveryman, janitor, cashier/clerk, night auditor, and manager of a cleaning service. (Tr. 19, 63–67, 78, 265–269) Plaintiff alleges he became disabled, unable to work, and eligible for disability insurance benefits on January 28, 1999, after injuring his back while unloading bolts of material weighing 400–600 pounds. (Tr. 55, 77, 237, 273) Twelve years prior to the January 28, 1999 re-injury of his back, Plaintiff underwent two micro discectomies and a lumbar laminectomy after he was involved in a motor vehicle accident. (Tr. 174, 216, 273) Plaintiff claims he suffers from degenerative disc disease accompanied by severe lower back and leg pain. He also suffers from bipolar affective disorder, which he was diagnosed with eighteen years ago.

## IV. The ALJ's Findings

In his decision of April 11, 2000, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits which are set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since his alleged onset of disability, January 28, 1999.

3. The claimant has the following severe impairments that limit his ability to perform basic work activities: degenerative disc disease at L4–5 with stenosis and L5 radiculopathy, status post lumbar laminectomy and discectomy in 1987, obesity, and dysthymia (not separately severe).

4. These medically determinable impairments do not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, 20 CFR Part 404.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. As a result of his impairments, the claimant has the following residual functional capacity: he can lift no more than 10 pounds frequently and 20 pounds occasionally, he requires a sit/stand option, he cannot do any prolonged walking, and he cannot do any jobs requiring frequent climbing, bending, stooping, squatting, crawling, crouching, or kneeling. Due to mental impairment, the claimant is slightly restricted in his activities of daily living, slightly restricted in his ability to maintain social functioning, seldom exhibits deficiencies of concentration, persistence, or pace, and has never had episodes of deterioration or decompensation in work or work-like settings.

7. The claimant has past relevant work as night auditor, which is sedentary, skilled work. He also has other past relevant work as set forth in the body of this decision.

---

**12.** 20 C.F.R. Part 404, Subpart P, App. 2, Rule 200.00(g).

8. The claimant's impairments do not prevent him from performing his past relevant work as a night auditor, both as he performed this job, and as it is customarily performed in the national economy.

9. The claimant has not been under a "disability" as defined in the Social Security Act, at any relevant time through the date of the decision.

(Tr. 20)

## V. Plaintiff's Challenges to the Commissioner's Decision

Plaintiff challenges the decision of the Commissioner denying his applications for disabilty insurance and supplemental security income benefits on several grounds. Plaintiff contends that the Commissioner's decision was not based on substantial evidence on the record as a whole, and contains several errors of fact and law that are grounds for reversal of the decision. Specifically, Plaintiff contends that: (1) the ALJ erred by not applying the correct legal standard for evaluating his subjective complaints of disabling pain, (2) the ALJ erred by not finding him presumptively disabled under section 1.05(C) of the Listing of Impairments, and (3) the ALJ improperly relied on the vocational expert's response to an incomplete hypothetical in concluding that Plaintiff could perform his past relevant work as a night auditor. Plaintiff requests reversal with directions to grant his claims for a period of disability commencing January 28, 1999, for disability insurance benefits, and for supplemental security income based upon his application filed May 26, 1999. He urges the Court to reverse the case without remand because the evidence establishes he is clearly disabled under the Social Security Act.

The Commissioner seeks an order affirming the decision denying Plaintiff disability and supplemental security income benefits. The Commissioner submits that the ALJ properly considered Plaintiff's subjective complaints, properly evaluated Plaintiff's alleged mental impairment, properly determined that Plaintiff's impairments did not meet or equal Listing 1.05(C), and properly relied on the vocational expert's testimony in concluding that Plaintiff's impairments do not prevent him from performing his past relevant work as a night auditor.

## VI. Analysis and Discussion

### A. Credibility Determination

Plaintiff first contends that the ALJ did not apply the correct legal standard to evaluate his testimony regarding his subjective complaints of pain. He argues that the ALJ's credibility determination was in error because the ALJ disregarded his subjective complaints of pain merely because those complaints were not fully corroborated by objective medical evidence. Plaintiff contends that the objective medical evidence demonstrates that he has a pain-producing impairment, which could reasonably be expected to produced the alleged pain. He also argues that his complaints of disabling pain are fully supported by the medical evidence because he has continually sought treatment for disabling back pain and has taken strong prescription pain medication.

■ Generally, credibility determinations are the province of the ALJ, who is "the individual optimally positioned to observe and assess witness credibility." [13] Although the court ordinarily defers to the ALJ as trier of fact on credibility, deference is not an absolute rule.[14] Reviewing

---

**13.** *Adams v. Chater,* 93 F.3d 712, 715 (10th Cir.1996) (quoting *Casias,* 933 F.2d at 801).

**14.** *Thompson,* 987 F.2d at 1490 (citations omitted).

courts recognize that some claimants exaggerate symptoms for the purposes of obtaining government benefits, and thus deference to the fact-finder's assessment of credibility is the general rule.[15] As credibility determinations are peculiarly within the province of the ALJ, a court will not upset the ALJ's credibility determinations when supported by substantial evidence.[16]

■ To be disabling, pain must be severe enough to preclude any substantial gainful employment whether by itself or in combination with other impairments.[17] The Tenth Circuit has set forth the following framework for analyzing evidence of allegedly disabling pain: (1) Whether claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, claimant's pain is in fact disabling.[18] Objective evidence includes physiological and psychological evidence that can be verified by external testing.[19] Subjective evidence comprises statements from the claimant and other witnesses that are evaluated on their credibility.[20]

■ If objective medical evidence shows a pain-producing impairment, the ALJ must then consider the claimant's allega-

tions of severe pain and decide whether to believe them.[21] Factors to be considered at this point include: "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony and objective medical evidence." [22]

■ While "[c]redibility determinations are peculiarly the province of the finder of fact, and the court will not upset such determinations when supported by substantial evidence," the ALJ must link his or her credibility finding to substantial evidence.[23] This entails that the ALJ explain why specific evidence led to a conclusion that the claimant's subjective complaints were not credible.[24] These findings as to credibility should be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." [25] The ALJ must articulate specific reasons for questioning the claimant's credibility where subjective pain testimony is critical.[26]

In this case, the ALJ found Plaintiff's testimony with regard to the severity of

---

**15.** *Frey v. Bowen,* 816 F.2d 508, 517 (10th Cir.1987).

**16.** *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995).

**17.** *Brown v. Bowen,* 801 F.2d 361, 362–63 (10th Cir.1986).

**18.** *Musgrave v. Sullivan,* 966 F.2d 1371, 1376 (10th Cir.1992) (citing *Luna v. Bowen,* 834 F.2d 161, 163–64 (10th Cir.1987)).

**19.** *Thompson,* 987 F.2d at 1488–89.

**20.** *Id.* at 1489.

**21.** *Id.*

**22.** *Kepler,* 68 F.3d at 391 (quoting *Thompson,* 987 F.2d at 1489).

**23.** *Id.* (internal citations omitted).

**24.** *Id.*

**25.** *Id.* (quoting *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted)).

**26.** *Kent v. Apfel,* 75 F.Supp.2d 1170, 1182 (D.Kan.1999) (citing *Kepler,* 68 F.3d at 391).

his pain and his ability to perform any work was not credible. (Tr. 18) In support of his credibility finding, the ALJ stated that "[t]he lack of documented specialized pain treatment, [Plaintiff's] failure to follow his doctor's recommended exercise regimen, and his ability to function part of the time without medication" led him to conclude that Plaintiff's pain is not as disabling as he claims. The ALJ also discussed several factors he relied upon in finding Plaintiff's pain testimony not credible. The ALJ concluded that while Plaintiff's daily activities are limited, his reported activities did not support a finding that he is precluded from all types of work activity. (Tr. 17) The ALJ noted that Plaintiff testified he was able to care for his personal needs, did no housework or yard work, was able to go out to visit friends and go to church, drove his stepchildren to school and his wife to the store, read books, newspapers, and magazines, and watch television. (Tr. 17)

The ALJ reported that Plaintiff's testimony was that he had continuous pain, including a sharp, stabbing pain in his lower back and a throbbing pain in his legs. (Tr. 17) The ALJ recounted Plaintiff's testimony that his pain was reduced for about two hours by pain medication and muscle relaxers, but that he could only take the medication every four hours. (Tr. 17) The ALJ also recited Plaintiff's statement at the hearing that he was able to function with the pain but it made him grumpy and irritable. (Tr. 17)

The ALJ next discussed Plaintiff's pain medications. He noted that Plaintiff could delay taking his medications for up to six hours prior to the time when he needed to drive. The ALJ found that although Plaintiff reported lightheadedness and a "foggy" feeling as side effects of the medications, Plaintiff had not reported any of these side effects in his medication questionnaires or discussed them with his doc-

tors. (Tr. 17) In regards to treatment sought to relieve pain, the ALJ found that Plaintiff had provided no documentation of a facet block treatment and there was no evidence that Plaintiff has used other methods of controlling pain, such as a TENS unit.

The ALJ also found Plaintiff's allegations of disabling limitations were not consistent with or supported by the objective medical findings in Dr. Riaz's report and in Dr. Dunn's treatment notes. (Tr. 18) The ALJ found that the examination conducted by Dr. Riaz disclosed evidence of symptom magnification or exaggeration. The ALJ also stated that Plaintiff appeared to exaggerate his pain at the hearing. (Tr. 18) In particular, the ALJ found that Plaintiff's representation that he gained 60 pounds when the medical records showed only half that amount of weight gain and his failure to provide documentation of his vocational rehabilitation services decision undermined his credibility. (Tr. 18)

The ALJ also included in his decision the fact that none of Plaintiff's treating physicians have opined that he was disabled from all work activity. (Tr. 18) The ALJ pointed out that Dr. Bieri's worker's compensation evaluation concluded that Plaintiff could do work at a light exertional level. (Tr. 18)

The ALJ also found that Plaintiff's poor earning record called into question his motivation to work. The ALJ noted that Plaintiff has worked at a larger number of jobs for relatively low wages and with significant breaks in employment. (Tr. 18) Additionally, the ALJ mentioned that Plaintiff's receipt of a temporary worker's compensation payments and pending lump-sum worker's compensation claim could act as a disincentive to his returning to work. (Tr. 18)

The ALJ also noted that Plaintiff's allegations of disabling mental limitations were not consistent with his reported daily activities. Specifically, the ALJ commented that Plaintiff's testimony regarding his daily activities of reading or watching television indicated that he does not have a disabling concentration problem and does not support a finding that he is precluded from all types of work activity. (Tr. 17)

■ Based upon the Court's review of the ALJ's credibility determination and the record, the Court determines that the ALJ appropriately and adequately explained with specific evidence his conclusion that Plaintiff's subjective complaints regarding the severity of his pain and his inability to perform any work were not credible. Furthermore, the Court finds that substantial evidence in the record supports the ALJ's credibility determination. While the Court recognizes that Plaintiff's use of prescription narcotic pain medication and attempts to gain relief by epidural steroid injections would tend to support his claims of pain, the Court concludes that, taken as a whole, the evidence supports the ALJ's determination that Plaintiff's testimony with regard to the severity of this pain and his inability to perform any work is not credible.

Plaintiff also argues that the ALJ did not provide valid reasons for giving no evidentiary weight to the testimony of his wife. He claims that the ALJ improperly disregarded the testimony of Plaintiff's wife's because the ALJ found it cumulative and presented only out of a desire to help her husband.

■ In his decision, the ALJ indicated that he had evaluated the testimony of Plaintiff's wife. He found her statements "basically cumulative and do not establish complete disability because they are based on [Plaintiff's] statements to her and because she has an interest and desire in assisting her husband in his claim for monetary benefits." (Tr. 18–19) The motivation of and relationship between a claimant and the witness is an appropriate factor for the ALJ to consider when assessing the testimony of Plaintiff's wife.[27] The ALJ, therefore, did not err by relying upon this factor in giving no evidentiary weight to her testimony.

In light of the above, the Court holds that the ALJ did not err in his assessment of Plaintiff's credibility or his wife's credibility. Furthermore, substantial evidence in the record as a whole supports the ALJ's credibility determinations.

## B. Listing of Impairments

Plaintiff next contends that the Commissioner's decision finding him not disabled should be reversed because he meets all the criteria for listing 1.05(C) of the Listing of Impairments contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Plaintiff claims that he is presumptively disabled because the medical evidence indicates his condition meets or equals the severity contemplated by section 1.05(C).

The Commissioner has developed a five-step sequential evaluation process for determining disability.[28]

Step one determines whether the claimant is presently engaged in substantial gainful activity. If he or she is not, the decision maker proceeds to step two, determining whether the claimant has a medically severe impairment or combination of impairments which significant-

---

**27.** *Adams*, 93 F.3d at 715.

**28.** *Thomas v. Apfel*, No. 99–2067–JWL, 1999 WL 1423073, at *2 (D.Kan. Dec. 14, 1999)

(citing *Thompson*, 987 F.2d at 1486; 20 C.F.R. §§ 404.1520, 416.920).

ly limit the claimant's ability to work. If the claimant is able to make such a showing, the decision maker proceeds to step three, whether the impairment meets or equals one of a number of listed impairments that are so severe as to preclude substantial gainful activity. If the claimant's impairment does not satisfy this step, then the decision maker proceeds to step four, where the claimant must show that the impairment prevents the claimant from performing work he has performed in the past. At step five, the burden shifts to the Commissioner to show that the claimant retains the residual functional capacity (RFC) to do other work that exists in the national economy.[29]

At step three of the sequential analysis, the ALJ determines whether a claimant's impairment "is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity."[30] If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[31]

In evaluating whether a claimant meets or equals the criteria for a listed impairment, the ALJ is required to compare the symptoms, signs, and laboratory findings about a claimant's impairments, as shown in the medical evidence associated with the claim, with the medical criteria shown with the listed impairment.[32] In making the determination whether a particular condition meets the requirements of the Listing of Impairments, the ALJ is required to discuss the evidence and explain why he found that a claimant was not disabled.[33] And while the record must demonstrate that the ALJ considered all of the evidence, the ALJ is not required to discuss every piece of evidence.[34] The ALJ must discuss the evidence supporting his decision and the uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence rejected.[35] In determining whether a claimant meets or equals a listing, the ALJ cannot ignore evidence favorable to the claimant.[36] The ALJ also cannot ignore the evidence as a whole by choosing to abstract selective pieces of evidence favorable to his or her position.[37]

Listing 1.05(C), which governs "other vertebrogenic disorders," provides:

> C. Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
>
> 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
>
> 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.[38]

**29.** *Thomas,* 1999 WL 1423073, at *3 (internal citations omitted).

**30.** *Bowen v. Yuckert,* 482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); 20 C.F.R. Pt. 404, Subpt. P, App. 1.

**31.** *Id.*

**32.** 20 C.F.R. §§ 404.1526(a), 416.926(a).

**33.** *Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir.1996); 20 C.F.R §§ 404.1526, 416.926.

**34.** *Id.*

**35.** *Id.*

**36.** *Owen v. Chater,* 913 F.Supp. 1413, 1420 (D.Kan.1995).

**37.** *O'Connor v. Shalala,* 873 F.Supp. 1482, 1491 (D.Kan.1995).

**38.** 20 C.F.R., Pt. 404, Subpt. P., App. 1, Lisitng 1.05(C).

A claimant has the burden at step three of demonstrating, through medical evidence, that his impairments "meet all of the specified medical criteria" contained in a particular listing.[39]

In this case, the ALJ expressly addressed the issue of whether Plaintiff's lower back impairment met the requirements of section 1.05(C) of the listing of impairments contained in Appendix 1, Subpart P, 20 C.F.R. § 404. (Tr. 16) The ALJ found that "the muscle weakness and sensory and reflex loss required by section 1.05.C.2 are clearly not documented or reflected in the medical record, and in fact are disproved by the test results discussed in Exhibits B4F, B10F, and B11F." (Tr. 16) (referencing exhibits at Tr. 174–78, 215–21, and 222–28) Based upon this, the ALJ found that Plaintiff's impairments "do not medically meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, 20 C.F.R. § 404." (Tr. 16)

The ALJ references three exhibits (B4F, B10F, and B11F) in support of his determination that Plaintiff's impairments do not medically meet or equal the severity of the muscle weakness and sensory and reflex loss required by subsection 2 of listing 1.05(C). The first exhibit cited by the ALJ is the report of Kamran Riaz, M.D., who performed a consultative examination of Plaintiff on September 18, 1999. (Tr. 174–78) Dr. Riaz's report noted pain in Plaintiff's back with straight leg raises measuring 30 degrees bilaterally (lying) without paraspinous muscle spasm. (Tr. 175) Plaintiff's reflexes were symmetrical throughout and Plaintiff had give-a-way weakness with 3/5 strength remaining in both lower extremities. (Tr. 176) Dr. Riaz observed that Plaintiff had mild difficulty performing the following: getting on and off the examining table, heel and toe walking, squatting and arising from the sitting position, and hopping. (Tr. 176) His report concluded that:

> [Plaintiff] has a history of low back discomfort status post surgical repair. Limited range of motion noted, without paraspinous muscle spasm. There is no asymmetrical reflex, sensory or motor deficit noted today. Give-a-way weakness in both lower extremities. Gait is small-stepped. Station is stable. He is overweight, without limited range of motion in the knees. No obvious dyspnea or edema. Prior MRI of the lumbar region enclosed. Despite surgery he persists with pain. He has undergone epidural injections.

(Tr. 177)

The second exhibit referenced by the ALJ is a worker's compensation evaluation performed by Dr. Peter V. Bieri on July 7, 1999. (Tr. 215–221) Dr. Bieri noted that Plaintiff's station and posture were unremarkable, his gait was slightly antalgic without lateralization, and he walked on heels and toes with marked difficulty secondary to low back pain. Upon examination of the lumbar spine, Dr. Bieri reported that Plaintiff's "flexion and extension were accompanied with a dramatic increase in subjective pain, along with brief, palpable muscle spasm. . . . Straight leg raising was positive bilaterally at 70° for pain radiating the entirety of both lower extremities, with brief, palpable muscle spasm." (Tr. 218) Sensory examination revealed no persistent loss of sensation and deep tendon reflexes were reduced bilaterally at the ankles and equal. (Tr. 218) Plaintiff's strength was judged by Dr. Bieri to be normal to manual testing against resistance. (Tr. 218) Dr. Bieri concluded that Plaintiff had a "lumbar sprain with radiculopathy aggravating pre-existing asymptomatic disease of the lumbar spine." (Tr. 219) He stated that

---

**39.** *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

Plaintiff had achieved maximum medical improvement and his impairments were permanent and stabilized. (Tr. 219)

The third medical record referenced by the ALJ is the medical record from one of Plaintiff's treating physicians, Dr. John Dunn, an orthopedist. Dr. Dunn's notes from October 11, 1999 indicate that Plaintiff had moderate tenderness over his left SI joint region and in his paraspinus musculature. (Tr. 227) He could forward flex to knee level only with extension being markedly limited. (Tr. 227) Distal sensation was intact bilaterally and motor was 5/5 throughout bilaterally. (Tr. 227) Dr. Dunn noted a positive Patrick's bilaterally and a positive straight leg raise on the left that causes pain radiating down the posterior aspect of his thigh and calf and into his heel. (Tr. 227)

On October 25, 1999, Dr. Dunn saw Plaintiff for a follow-up exam for low back pain and bilateral lower extremity pain. (Tr. 222) Dr. Dunn reported that Plaintiff confirmed his pain distribution is 40% low back and 60% bilateral lower extremities in a circumferential distribution to the knee, both sides being approximately equal. (Tr. 222) Dr. Dunn assessed Plaintiff with "low back pain, bilateral lower extremity pain, L4–5 degenerative disc disease; left L4–5 neural foraminal stenosis; right L5 chronic radiculapathy." (Tr. 222) Dr. Dunn also indicated that Plaintiff's EMG findings do not correlate with his clinical complaints or his radiographic studies. (Tr. 222) He further reported that he emphasized weight loss, a healthy diet, aerobic conditioning, trunk strengthening exercises, such as push ups and sit ups, and smoking cessation to Plaintiff. He gave Plaintiff a prescription for Darvocet N 100 [40] and Celebrex.[41]

The issue here is whether substantial evidence in the record supports the ALJ's conclusion that the section 1.05(C).2 criteria, i.e., radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss, are clearly not documented or reflected in the medical record, and are disproved by the test results discussed in the medical records of Drs. Riaz, Bieri, and Dunn. (Tr. 174–78, 215–21, and 222–28)

At the hearing level, the administrative law judge is responsible for deciding the ultimate legal question whether a listing is met or equaled.[42] Pursuant to 20 C.F.R. §§ 404.1526(a) and 416.926(a), the ALJ decides whether a claimant's impairments are medically equivalent to a listed impairment in Appendix 1 by determining if the medical findings are at least equal in severity and duration to the listed findings. This decision is made by comparing the symptoms, signs and laboratory findings about a claimant's impairments, as shown in the medical evidence on record about the claim, with the medical criteria shown with the listed impairment.[43] Under the regulations, assessments of medical equivalence are to be based solely upon medical evidence that is supported by medically acceptable clinical laboratory diagnostic techniques.[44] The ALJ also "consider[s] the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."[45]

---

**40.** A mild narcotic analgesic for the relief of mild or moderate pain. Physicians' Desk Reference 1907 (56th ed.2002).

**41.** A non-steroidal anti-inflammatory drug used for the treatment of signs and symptoms of osteoarthritis and rheumatoid arthritis. *Id.* at 2676.

**42.** Social Security Ruling (SSR) 96–6p, 1996 WL 374180, at *3 (July 2, 1996).

**43.** *Id.*

**44.** 20 C.F.R. §§ 404.1526(b), 416.926(b).

**45.** *Id.*

Plaintiff argues that the medical record shows that he has consistently experienced lower back and leg pain. He points to Dr. Bieri's report of significant limitation of motion and palpable muscle spasm and Dr. Riaz's report of muscle weakness in both lower extremities in support of his claim that he meets the requirements of listing 1.05(C). Plaintiff, however, has not identified any evidence of the sensory and reflex loss also required to meet the listing.

The Court has reviewed the medical record and determines that substantial evidence supports the ALJ's conclusion that the section 1.05(C).2 criteria, i.e., muscle weakness and sensory and reflex loss, are clearly not documented or reflected in the medical record. While there is some indication of muscle weakness in the medical record, there is no indication of the sensory and reflex loss also required to meet the listing. On September 18, 1999, Dr. Riaz reported "give-a-way weakness in both lower extremities," but "no asymmetrical reflex, sensory or motor deficit noted today." (Tr. 177) Dr. Dunn, Plaintiff's treating orthopedic physician noted on October 11, 1999 that "distal sensation was intact bilaterally and motor was 5/5 throughout bilaterally." (Tr. 227) In addition, Dr. Hausheer, state agency medical consultant, opined in his Residual Functional Capacity Assessment form, completed on July 19, 1999, that Plaintiff did not meet or equal any listing. (Tr. 185)

A disability claimant bears the burden of proving that his or her impairments meet or equal a listed impairment at step three of the sequential evaluation process.[46] Given the evidence of record, Plaintiff failed to prove that he suffered from the sensory and reflex loss required to meet Listing 1.05(C). The Court, therefore, holds that the ALJ's finding that Plaintiff's impairment does not meet or

equal Listing 1.05(C) to be supported by substantial evidence in the record as a whole.

## C. Vocational Expert's Testimony

Plaintiff next contends that the ALJ erred in improperly relying on the vocational expert's response to an incomplete hypothetical and determining that he could perform past relevant work as a hotel night auditor. He argues that the vocational expert's testimony is defective in that it responded to a hypothetical that did not fully set forth all of his impairments. In particular, the hypothetical failed to properly characterize the extent and effects of Plaintiff's mental impairment. Plaintiff argues that the ALJ's characterization of the functional limitation of his mental impairment as "seldom" having deficiencies of concentration, persistence or pace is contrary to the medical evidence that shows that he "often" exhibits deficiencies of concentration, persistence or pace.

The Commissioner argues that the ALJ's hypothetical question was entirely proper because the ALJ is only required to ask hypothetical questions that encompass impairments that find support in the record. The Commissioner asserts that the ALJ may restrict his questions to those limitations he has found to exist based upon substantial evidence in the record.

At the hearing, the ALJ posed the following hypothetical question to the vocational expert:

Assume that [the claimant] cannot lift over 10 pounds frequently or over 20 pounds occasionally. Assume the claimant cannot engage in any work activity requiring prolonged walking. By that, I mean he can walk around a room or between rooms but nothing more than

---

**46.** *Bowen,* 482 U.S. at 146 n. 5, 107 S.Ct. 2287.

that. Assume that in any work activity, claimant would perform, he would require the opportunity to be able to alternate sitting and standing at will. Assume the claimant cannot perform any work activity requiring frequently climbing, bending, stooping, squatting, crouching, crawling or kneeling. He can perform those postural activities occasionally but not frequently during the work day. And in addition to those physical limitations, assume the claimant has ... slight restriction on his activities of daily living, slight difficulty in maintaining social functioning which would prevent frequent interaction with co-workers, supervisors or the public during the work day. But occasional interaction with such individuals during the work day would not present a problem. *Assume that his deficiencies of concentration, persistence or pace, seldom resulting in a failure or inability to be able to understand, remember or carry out at least simple job tasks or instructions in a timely manner. And by seldom, I would mean such deficiencies would occur less than once a day on the order of once or twice a week.* And assume that he has never had an episode of deterioration or decompensation in the work setting, ....

(Tr. 300–301) (emphasis added)

In response, the vocational expert testified that such a hypothetical individual could perform Plaintiff's past relevant work as a night auditor.

Plaintiff contends that the ALJ's inclusion of Plaintiff "seldom" exhibiting defi-

ciencies in concentration, persistence or pace in the hypothetical to the vocational expert is not supported by substantial evidence in the record. He specifically directs the Court's attention to the Psychiatric Review Technique (PRT) form completed by state agency medical consultant R. Diller, Ph.D, on October 4, 1999, in which Dr. Diller indicated that Plaintiff "often" has deficiencies of concentration, persistence or pace. (Tr. 212)

Where there is evidence of a disabling mental impairment, the ALJ must fill out a PRT form listing the existence of "certain medical findings which have been found especially relevant to the ability to work" and evaluating and rating the claimant's ability to function despite the impairment.[47] "[T]here must be competent evidence in the record to support the conclusions recorded on the [PRT] form and the ALJ must discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form."[48] Where an ALJ's conclusions concerning a claimant's abilities, expressed on the PRT form, differ dramatically from those reached by a treating physician, an explanation is required.[49] This is a corollary of the requirement that conclusions reached on the PRT form be supported by substantial evidence.[50]

Fact findings of state agency medical and psychological consultants are to be treated by the ALJ as non-examining expert opinion evidence.[51] Although the ALJ is not bound by findings made by state agency medical or psychological con-

**47.** 20 C.F.R. §§ 404.1520a, 416.920a; *Cruse v. United States Dep't of Health & Human Servs.,* 49 F.3d 614, 617 (10th Cir.1995).

**48.** *Washington v. Shalala,* 37 F.3d 1437, 1442 (10th Cir.1994) (quoting *Woody v. Sec'y. of Health & Human Servs.,* 859 F.2d 1156, 1159 (3d Cir.1988)).

**49.** *Winfrey v. Chater,* 92 F.3d 1017, 1024 (10th Cir.1996).

**50.** *Washington,* 37 F.3d at 1442.

**51.** 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); SSR 96–6p, 1996 WL 374180, at *2 (July 2, 1996).

sultants, the ALJ must consider their findings as opinion evidence.[52] When the ALJ considers the findings of a state agency medical or psychological consultant, the ALJ evaluates the findings using factors such as medical specialty and expertise with social security rules, supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions.[53] The ALJ may not ignore these opinions and must explain the weight given to the opinions in his or her decision.[54]

In this case, the ALJ completed his own PRT form and appended it to his decision. The ALJ's functional limitation assessment for concentration, persistence, or pace deviated from the one recorded on the state agency medical consultant's PRT form. The ALJ included the following discussion of the weight he accorded Plaintiff's non-treating reviewing physicians:

> [T]he opinions of the state agency's evaluating physicians are not due significant weight because they are not those of treating physicians and are not based on the full record before the undersigned. In particular, these consultants did not have available for consideration the appearance and testimony of the claimant and the medical records which were entered into the record subsequent to their reviews.

The ALJ's decision also discusses and provides evidentiary explanation why he concluded that Plaintiff's functional limitation for deficiencies in concentration, persistence or pace should be upgraded from "often" to "seldom." The ALJ noted that

Plaintiff was able to care for his personal needs, go out to visit friends and go to church, drive his step-children to school and his wife to the store, read books, newspapers, and magazines, and watch television. (Tr. 17) The ALJ also specifically noted that Plaintiff indicated on his questionnaire that he had no problems following what he was reading or watching on television. (Tr. 17) The ALJ found that this did not support Plaintiff's allegation of a disabling concentration problem. In a similar case, the Tenth Circuit, in an unpublished decision, affirmed the ALJ's decision in which the ALJ's conclusions on the PRT form did not differ dramatically from those reached by a consulting psychiatrist, i.e., "seldom" versus "often" exhibiting deficiencies of concentration, persistence or pace, and the ALJ provided sufficient rationale for the departure.[55] The court, in making its decision, noted that a claimant's daily activities are properly considered when evaluating the severity of his alleged nonexertional impairments.[56]

In light of the ALJ's discussion of why he determined the state agency's evaluating physicians were not entitled to significant weight and his specific explanation of his reasons for changing Plaintiff's functional limitation for deficiencies in concentration, persistence or pace from "often" to "seldom," the Court concludes that the ALJ has provided sufficient rationale for departing from Dr. Diller's conclusion on the PRT form.

■ For the foregoing reasons, the Court should find no reversible error.

---

**52.** 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).

**53.** 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).

**54.** *Id.;* SSR 96–6p, 1996 WL 374180, at *2 (July 2, 1996).

**55.** *Daniels v. Apfel,* No 00–5009, 2000 WL 1761087, at *4 (10th Cir.2000).

**56.** *Id.* (citing 20 C.F.R. § 404.1529(c)(3)(i)).

The hypothetical question to the vocational expert included all limitations the ALJ found to be credible and supported by substantial evidence in the record. The vocational expert's testimony based upon those limitations, therefore, supports the ALJ's determination that Plaintiff's impairments do not prevent him from performing his past relevant work as a night auditor.

## VII. Conclusion

After careful consideration of the record and the briefs submitted by the parties, the Court holds that the record contains substantial evidence to support the ALJ's determination, and thus the Court affirms the decision of the Commissioner.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner denying Plaintiff benefits is affirmed. Such decision will dispose of this case, including Plaintiff's Complaint (doc. 1), which has been considered a petition for review.

**IT IS FURTHER ORDERED** that Jo Anne B. Barnhart be substituted for Larry G. Massanari as the party defendant in this suit, and the Clerk shall change the docket to reflect the caption as shown on this Memorandum and Order.

**IT IS SO ORDERED.**