Valerie MORRIS, o/b/o Thomas
FETH, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 03–4163–JAR.

United States District Court,
D. Kansas.

July 19, 2004.

Scott L. Johnson, Tilton & Tilton, Chtd., Topeka, KS, for Plaintiff.

David D. Plinsky, Office of United States Attorney, Topeka, KS, for Defendant.

## MEMORANDUM & ORDER

ROBINSON, District Judge.

Plaintiff Valerie Morris, on behalf of her minor son Thomas Feth, brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner of Social Security's denial of her application for a period of supplemental security income benefits for her son under Title XVI of the Social Security Act. According to plaintiff, the ALJ erred in not finding all of Thomas's impairments severe, failing to make a proper credibility assessment, and failing to properly assess whether Thomas's impairments met or equaled a listed impairment. As explained in more detail below, the Court concludes that the decision, in part, is based on insubstantial evidence and/or on an incorrect application of the law, and therefore the Court reverses and remands this case.

## I. Procedural Background

On March 22, 2001, Ms. Morris protectively filed an application for a period of supplemental security income benefits on behalf Thomas, who was born on May 2, 1997, and was three years old at the time of filing. Ms. Morris alleged Thomas's disability began June 1, 2000, due to: being sick all the time; having colds that turn into pneumonia; being unable to go out in the sun; having a lack of energy;

acid reflux disease; asthma; and growth problems. The application was denied both initially and upon reconsideration. At plaintiff's request, an administrative law judge (ALJ) held a hearing on March 11, 2002, at which Ms. Morris, Thomas, and their counsel were present. On July 15, 2002, the ALJ rendered a decision denying all benefits, on the basis that Thomas was not under a "disability" as defined by the Social Security Act. After the ALJ's unfavorable decision, plaintiff requested review by the Appeals Council; her request for review was denied on July 15, 2003. Thus, the ALJ's decision is the final decision of defendant.

## II. Standard of Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is free of legal error and supported by substantial evidence in the record as a whole.[1] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of defendant.[3]

## III. Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ...."[4] The Social Se-

---

1. See Brown v. Callahan, 120 F.3d 1133, 1135 (10th Cir.1997).

2. White v. Massanari, 271 F.3d 1256, 1257 (10th Cir.2001) (citing Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir.1994)).

3. Id.

4. Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1982)).

curity Act further provides that an "individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[5]

The Social Security Administration has established a three-step sequential evaluation process for determining whether a claimant under the age of 18 is disabled,[6] and the ALJ in this case followed the three-step process. In order to be disabled, the ALJ must determine "(1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404."[7] This is a sequential process, so if the ALJ finds that the child is or is not disabled at any step, he does not need to make a finding at any subsequent step.[8] Here, the ALJ determined that Thomas was not engaged in substantial gainful activity; had severe impairments of "joint problems/a connective disease and asthma;" and did not have an impairment that met or equaled a listed impairment.

## IV. Analysis of Plaintiff's Specific Arguments

In her motion, plaintiff contends that the ALJ: (1) erred in not finding all of Thomas's impairments severe; (2) failed to make a proper credibility determination; and (3) failed to properly assess whether Thomas's impairments met or were equivalent to a listed impairment. The Court addresses each of these arguments in turn.

### A. ALJ's Step 2 Analysis–Plaintiff's Severe Impairments

■ Plaintiff disputes the ALJ's step two determination that Thomas's acid reflux disease and tibial torsion were not severe impairments, claiming the ALJ did not support his findings with substantial evidence. An impairment is not severe if it does not significantly limit a claimant's ability to do basic work activity.[9] Basic work activities include such functions as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, and speaking.[10] The claimant has the burden at this level to show that the impairment would have more than a minimal effect on his ability to do these work activities.[11]

Although plaintiff cites evidence that Thomas had problems with acid reflux, she does not cite evidence that it affected his functioning with respect to the basic work activities. Therefore the ALJ sufficiently supported his determination that this impairment was not severe. The only evidence that Thomas's tibial torsion affected his basic work activity functioning is that he fell once during a running test. This is not evidence that Thomas would have more than minimal problems with functions such as walking, standing, sitting, or lifting. The ALJ found that Thomas had

---

**5.** 42 U.S.C. § 1382c(a)(3)(C)(i) (2004).

**6.** 20 C.F.R. § 416.924 (2003).

**7.** *Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir.2001) (citing 20 C.F.R. § 416.924(a)).

**8.** 20 C.F.R. § 416.924(a).

**9.** 20 C.F.R. § 416.921(a).

**10.** *Id.* § 416.921(b).

**11.** *See Williams,* 844 F.2d at 751.

some severe impairments, which required him to go to the third step in the evaluation process and analyze whether these impairments met a listed impairment. And the ALJ considered both of these non-severe impairments when making his step three determination. Because plaintiff did not meet her burden of proving that these impairments cause more than a minimal effect on Thomas's ability to do work activities, the ALJ's analysis was sufficient and must be upheld.

### B. ALJ's Credibility Analysis

■■ Plaintiff argues that without first conducting a credibility analysis, the ALJ rejected the testimony of plaintiff and information provided in function reports filled out by plaintiff and a third party, a family friend. When a child claimant is unable to adequately describe his symptoms, "the ALJ must accept the testimony of the person most familiar with the child's condition." [12] If the ALJ decides that person's testimony is not credible, he must make specific findings concerning the credibility of that person's testimony. [13] In this case, plaintiff is the only one who testified at the hearing. Plaintiff contends that her testimony, and the information provided in the function reports included examples of Thomas's "extreme" and "marked" limitations. Thus, plaintiff argues, the ALJ must have found her testimony and the information in the function reports not credible.

The ALJ considered plaintiff's testimony, in his discussion of the medical evidence, and he found that her testimony was consistent with the medical evidence. While it is unclear whether the ALJ con-

sidered the third party's function report, nothing in the report appears to conflict with the ALJ's findings. However, because the ALJ did not properly discuss the evidence he relied on in deciding whether Thomas's impairments were functionally equivalent to a listed impairment, as discussed in the next section, the Court is unable to determine whether the ALJ discredited this testimony, or accepted it as evidence that Thomas's impairments were not "marked" or "extreme." Therefore, on remand when the ALJ states what evidence he is relying on for his "functionally equivalent" analysis, he must state whether his decision is based on determining that this evidence is not credible, in which case he must make a proper credibility determination; or, whether he believes the testimony is only evidence that Thomas's impairments are less than "marked," in which case it would not be an error for the ALJ to fail to expressly address credibility. [14]

### C. ALJ's Step Three Analysis–The Listing of Impairments

Once the ALJ has determined that a child is not engaged in substantial gainful activity and has a severe impairment, the ALJ must then determine whether the child's impairment meets, is "medically equal," or "functionally equal" to the requirements of a Listed Impairment under 20 C.F.R. Pt. 404, Subpt. P, App. 1. [15]

#### 1. Meets or is "Medically Equivalent" Analysis

■ The ALJ determined that Thomas did not have an impairment that met or

---

**12.** *Briggs,* 248 F.3d at 1239 (citing 20 C.F.R. § 416.928(a)).

**13.** *Id.*

**14.** *See Hilson v. Barnhart,* No. 01–7142, 64 Fed.Appx. 134, 136, 2003 WL 1904787, *1

(10th Cir. Apr.21, 2003). Pursuant to 10th Cir. Rule 36.3(B)(1), the court cites this unpublished opinion for its persuasive value.

**15.** 20 C.F.R. § 404.924(d).

was medically equivalent to a listed impairment. In making this finding, the ALJ merely stated that Thomas did not meet a Listing. The ALJ did not explain his findings with citation to evidence from the record as required. It is improper for the ALJ not to "discuss the evidence or his reasons for determining that [a claimant] was not disabled at step three, or even identify the relevant Listing or Listings."[16] The ALJ cannot rely on a summary conclusion that a claimant's impairments did not meet or equal any Listed Impairment because "[s]uch a bare conclusion is beyond meaningful judicial review."[17]

 In this case, however, Plaintiff concedes that Thomas's impairments did not meet a Listing. It is proper for a court to find an ALJ's error harmless when "based on material the ALJ did at least consider (just not properly), [a court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."[18] Because plaintiff admitted that Thomas's impairments do not meet a Listing, the Court can confidently say that no reasonable fact finder would determine that they did.

 However, even though Plaintiff concedes that Thomas's impairments do not meet a Listing, it is possible that the impairments could be "medically equivalent" to a listed impairment. This happens when "the medical findings are at least equal in severity and duration to the listed findings."[19] Evidence of medical equivalence must be proven by medical evidence,

and supported by medically acceptable clinical laboratory diagnostic techniques.[20] Plaintiff asserted two Listings that Thomas "came close" to meeting, and because the ALJ failed to adequately describe his reasons for his determination that Thomas did not meet or equal a Listing, the Court is unable to properly review whether the ALJ had substantial evidence for his decision that Thomas did not "medically equal" a Listing. Plaintiff cited enough evidence of medical equivalence that the Court cannot confidently say that no fact finder would be able to determine that Thomas's impairments "medically equal" a listed impairment.

Therefore on remand, the ALJ should consider the two listings Plaintiff alleges Thomas comes close to meeting, Listing 100.02(B)-Growth impairment, and Listing 105.08-Malnutrition, and any other Listing the ALJ deems relevant. The ALJ should explain his findings regarding the medical evidence and whether Thomas's impairments are medically equivalent to any listed impairment considered.

### 2. "Functionally Equivalent" Analysis

If the ALJ finds that Thomas's impairment does not meet or medically equal a listed impairment, he must determine whether the impairment functionally equals a listed impairment.[21] Functional equivalency means that an impairment is of "listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in

---

**16.** *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir.1996).

**17.** *Id.*

**18.** *Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir.2004).

**19.** 20 C.F.R. § 416.926(a).

**20.** *Buck v. Barnhart,* 238 F.Supp.2d 1255, 1267 (D.Kan.2002) (citing 20 C.F.R. §§ 404.1526(b), 416.926(b)).

**21.** 20 C.F.R. § 416.924(d).

one domain...."[22] The domains are "broad areas of functioning intended to capture all of what a child can or cannot do,"[23] and consist of the following six considerations: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being."[24] When determining a child's limitations, the ALJ should consider how the child's functioning is affected during all of the child's activities, including everything he does at home, at school, and in his community.[25] The ALJ will look at how "appropriately, effectively, and independently [a child] perform[s][his] activities compared to the performance of other children [the child's] age who do not have impairments."[26]

The ALJ should find "a 'marked' limitation in a domain when [a child's] impairment(s) interferes seriously with [his] ability to independently initiate, sustain, or complete activities."[27] A marked limitation is one that is more than moderate, but less than extreme.[28] An ALJ should find a child to have an "extreme" limitation in a domain when his "impairment(s) interferes very seriously with [his] ability to independently initiate, sustain, or complete activities."[29] The ALJ should rate the worst limitations as extreme, but an extreme limitation "does not necessarily mean a total lack or loss of ability to function."[30]

Plaintiff objects to the ALJ's finding with respect to all six domains, and states that there is evidence that Thomas is more limited than the ALJ determined. The ALJ found that Thomas did not have any significant limitation in the domains of acquiring and using information, attending and completing tasks, and caring for himself. The ALJ determined that Thomas had less-than-marked limitation in the domains of interacting and relating with others, moving about and manipulating objects, and health and physical well-being. Plaintiff objects to the ALJ's determination because she believes the ALJ did not fulfill his duty to discuss the activities he considered and the evidence he relied on when making his decision.

Plaintiff disputes the ALJ's decision at the first and second domains, acquiring and using information and attending and completing tasks, because the ALJ cited relevant considerations, but did not specify what evidence he was relying on in making his determination. Plaintiff cites evidence of Thomas's limitations, such as Plaintiff's testimony that Thomas "totally shuts down" when he gets sick, is irritable and cranky when he does not get enough sleep, and has limited ability to pay attention and stick with a task. Plaintiff also cites to the family friend's statement that Thomas is still very young and sometimes has problems keeping on task. The fact that the ALJ cited to Plaintiff's testimony, with respect to other issues under consideration, may indicate that he considered her testimony in this regard. But it is unclear what evidence he actually relied on in making his decision at domains one and two.

22. *Briggs v. Massanari*, 248 F.3d 1235, 1237 n. 1 (10th Cir.2001) (quoting 20 C.F.R. § 416.926a(a)).

23. 20 C.F.R. § 416.926a(b)(1).

24. *Id.*

25. *Id.* § 416.926a(b).

26. *Id.*

27. *Id.* § 416.926a(e)(2)(i).

28. *Id.*

29. *Id.* § 416.926a(e)(3)(i).

30. *Id.*

In the third domain, interacting and relating with others, the ALJ made note of the fact that Thomas has irritability related to his gastric problems and/or pain. He then stated that all assessments of Thomas's communication and interaction skills were within normal limits, citing "Exhibit 16F for screening" as an example. Exhibit 16F appears to be a report from a physician, and contains no information regarding Thomas's interaction and relation with others, so it is unclear what evidence the ALJ was relying on when he determined that Thomas had "less-than-marked" limitation in this domain.

For the fourth domain, moving about and manipulating objects, the ALJ should consider factors such as, "[a child] should be able to walk and run with ease" and "should be showing increasing control of crayons ...." [31] Here the ALJ mentioned that Thomas had problems running because of tibial torsion, was generally clumsy, and had pain with excessive exercise. But, the ALJ's analysis is lacking because he did not also consider Thomas's documented problems with his grip, including Plaintiff's testimony that Thomas has trouble gripping a crayon.

In the fifth domain, caring for yourself, the ALJ noted that Thomas had periods of lethargy, some days sleeping for 14–15 hours continuously. The ALJ found that based on Plaintiff's testimony, this did not appear to be a chronic problem; and therefore he found Thomas had no limitations in this domain. The ALJ failed to explain why he considered this not a "chronic" problem. Plaintiff argues that the ALJ obviously failed to consider Thomas's trouble controlling his bowels,

his decreased eating, as well as Plaintiff's testimony that Thomas sometimes goes two days without eating. Because the ALJ made such brief statements regarding the evidence he considered at these domains, it is unclear whether he at all considered Thomas's eating and bowel problems when determining his functional limitations.

Finally at the sixth domain, health and physical well-being, the ALJ is to consider the cumulative effects of a child's impairments on the child's functioning that were not considered in the other domains.[32] The ALJ may consider such things as a child's functioning during periods when his condition is worsening and how long the periods last,[33] and how a child's medication or treatment affects his physical well-being.[34] At this domain, the ALJ stated that he considered Thomas's history of hospitalizations and other recurrent pneumonia, gastrointestinal, and joint symptoms. He noted: that there were no gastrointestinal disease findings on post hearing documents; that Thomas will continue to require periodic testing and examination for his joint problems, connective disease, and asthma; and that Thomas has some documented side effects from his medications.

At the sixth domain the ALJ can consider a child's limitations "marked" if he is frequently ill from his impairments or has frequent exacerbation of his impairments that result in "significant, documented symptoms or signs." [35] The regulation states that "'frequent[']' means that [a child] ha[s] episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each last-

31. *Id.* § 416.926a(j)(2)(iii).

32. *Id.* § 416.926a(l).

33. *Id.* § 416.926a(l)(3).

34. *Id.* § 416.926a(l)(2).

35. *Id.* § 416.926a(e)(2)(iv).

ing 2 weeks or more."[36] The ALJ may also find that a child has a "marked" limitation if he has episodes of illness that occur more often than 3 times in a year but do not last for 2 weeks, or occur less often than 3 times a year but last longer than 2 weeks, "if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity."[37] An impairment can be characterized as extreme at this domain if the impairment causes episodes of illness in excess of that required for a marked impairment.[38]

Plaintiff asserts the number of times Thomas had exacerbations of his illnesses was enough to find that he has at least "marked," if not "extreme," limitations at this domain. The ALJ did not discuss this criteria and did not discuss whether Thomas's impairments caused enough documented symptoms and signs to be "marked" or "extreme" limitations. Therefore on remand, the ALJ should reconsider whether Thomas's episodes of illness or exacerbations occur enough to be considered "extreme."

Also, Plaintiff contends that the ALJ should have considered Thomas's small height and weight at this final domain since he did not discuss it at any other domain and it may have an effect on his physical or mental functioning.[39] Since the Listings relevant to height and weight require that the child's height and weight be at or below the third percentile, it would seem important to consider that Thomas's height and weight was at slightly less than the fifth percentile during his disability period. Yet the ALJ did not mention this as a factor during his "functionally equivalent" decision.

While it is true that the ALJ considered most of the evidence in Plaintiff's record, the ALJ must also discuss his findings in such a way that a court can conduct meaningful review.[40] Here Plaintiff has offered evidence that Thomas's cumulative impairments have caused limitations in his abilities in the six functional domains the ALJ must consider. The ALJ failed to support his decisions regarding each function with specific evidence so that a reviewing court can determine whether he had substantial evidence for his decision. Therefore this case is remanded for the ALJ to reconsider whether Thomas's impairments are functionally equivalent to a Listed Impairment and for the ALJ to state sufficient reasons for his decision.

## V. Conclusion

Therefore, the Court finds that this action should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to conduct further proceedings as follows:

Upon receiving the court's final order of remand, the Appeals Council of the Social Security Administration will remand this case and direct the ALJ to reassess the severity of Thomas's impairments in accordance with the statute and regulations. The ALJ should reconsider whether Thomas's impairments are medically equivalent or functionally equivalent to a listed impairment. If the ALJ does not find the impairments medically equivalent to a listed impairment, and therefore must evaluate functional equivalence, he must state the specific evidence of activities and limita-

36. *Id.*

37. *Id.*

38. *Id.* § 416.926a(e)(3)(iv).

39. *See id.* § 416.926a(1).

40. *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir.1996).

tions he relies on to make his decision at each of the domains. If the ALJ disagrees with the severity of symptoms alleged in any of the evidence presented on Thomas's behalf by his mother or the third party, the ALJ should make a determination regarding the credibility of that evidence.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **REVERSED AND REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.

**IT IS SO ORDERED.**