**Gloria A. HILL, Plaintiff,**

v.

**Michael J. ASTRUE,[1] Commissioner of Social Security, Defendant.**

No. 06–1371.

United States District Court,
D. Kansas.

Dec. 10, 2007.

---

1. On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Daniel A. Parmele, Law Offices of Daniel Parmele, P.C., Springfield, MO, for Plaintiff.

Emily B. Metzger, Office of United States Attorney, Wichita, KS, for Defendant.

## ORDER

WESLEY E. BROWN, Senior District Judge.

Now before the court is the review of the final decision of the Commissioner of Social Security denying Gloria A. Hill disability insurance benefits and supplemental security income payments. The matter was referred to the Magistrate Judge for a recommendation and report pursuant to Rule 72(b), Federal Rules of Civil Procedure. The Recommendation and Report was filed on October 4, 2007. Neither party filed an objection to the Report.

■ The Magistrate Judge recommended the decision of the Commissioner be reversed, and the case be remanded for further proceedings (sentence four remand). In the Recommendation and Report (Doc.), the Magistrate Judge found four errors in the analysis of the Administrative Law Judge (ALJ). First, the court ruled the ALJ gave "substantial weight" to incomplete reports contained within the administrative record. The administrative record is a necessary and required part of the record on appeal. *Goatcher v. United States Dep't of Health and Human Services*, 52 F.3d 288, 289 (10th Cir.1995). On remand, the ALJ should include in his analysis the missing documents from the record.

■ Second, the court ruled the ALJ erred in his analysis of the medical opinion of Dr. Seifert. The ALJ failed to give consideration to the MMPI–2 testing completed by Dr. Seifert, finding he was not qualified to interpret the results of such testing. However, the ALJ failed to discuss the qualification of the doctor in interpreting the results of the test, and failed to cite any authority regarding why he is not qualified. On remand, the ALJ should give proper weight to Dr. Seifert's opinion and the results of the MMPI–2 test.

■■ Third, the court found the ALJ erred in his analysis of the medical opinions of Dr. Brewer. The magistrate judge discovered the record was out of order, which may have effected the analysis of the ALJ. Also, the ALJ did not give proper consideration to the opinions of Dr. Brewer. The medical opinion of Dr. Brewer was consistent with the medical opinion of other doctors, yet the ALJ did not discuss the consistencies, and determined the medical opinion of Dr. Brewer was not supported by the evidence. On remand, the ALJ should consider the records of Dr. Brewer in their entirety, and discuss the medical opinion of Dr. Brewer in relation to the medical opinion of the other physicians.

Fourth, the court found the ALJ must reconsider the findings in step two, three, and four, including the RFC findings. Proper consideration was not given to the opinions of the doctors and there were missing portions of the record, as discussed above. Therefore, after the ALJ corrects the errors set out in the Report and Recommendation, the analysis of steps two, three, and four should be reexamined.

IT IS ORDERED that the Recommendation and Report of Magistrate Judge Reid (Doc. 13) be adopted by this Court; and

IT IS FURTHER ORDERED that the decision of the Commissioner be REVERSED, and this case be remanded to the Commissioner, with directions to conduct further proceedings in accordance with the standards set out in the Report.

SO ORDERED this 10th day of December, 2007.

## RECOMMENDATION AND REPORT

JOHN THOMAS REID, United States Magistrate Judge.

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere

conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan,* 794 F.Supp. 1045, 1047 (D.Kan.1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn,* 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as

any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas,* 540 U.S. 20, 124 S.Ct. 376, 379–380, 157 L.Ed.2d 333 (2003).

The claimant bears the burden of proof through step four of the analysis. *Nielson v. Sullivan,* 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Nielson,* 992 F.2d at 1120; *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir.1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson,* 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f, g).

## II. History of case

On August 29, 2006, administrative law judge (ALJ) William H. Rima III issued his decision (R. at 14–32). Plaintiff alleges disability beginning July 1, 2004 (R. at 14). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since July 1, 2004, the alleged onset date (R. at 16). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, a depressive disorder NOS, rule out substance abuse disorder, and rule out personality disorder with antisocial features (R. at 16–21). At step two, the ALJ further determined that the following impairments were not deemed severe: carpal tunnel syndrome, stroke or cerebral vascular accident, mental retardation, a shoulder disorder, and hypertension (R. at 22). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 22–24). After establishing plaintiff's RFC (R. at 24–25), the ALJ determined at step four that plaintiff can perform past relevant work as a customer service representative (R. at 31–32). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 32).

## III. Did the ALJ err by failing to include the entire administrative record?

In a social security disability case, the court has the duty to meticulously examine the record and determine on the record as a whole whether the Commissioner's factual findings are supported by substantial evidence and whether the Commissioner applied correct legal standards. *Pace v. Shalala,* 893 F.Supp. 19, 20 (D.Kan.1995). The entire administrative record is a necessary part of appellant's record on appeal. This area of law is fact-specific and our standard of review is deferential to the Commissioner; therefore, the complete administrative record is required whether appellant argues that the findings are not supported by substantial

evidence or that incorrect legal standards were applied. *Goatcher v. United States Dep't of Health & Human Services,* 52 F.3d 288, 289 (10th Cir.1995). A court has the authority to remand a case for further consideration if unable to exercise meaningful or informed judicial review because of an inadequate administrative record. *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 594, 100 S.Ct. 1889, 1898, 64 L.Ed.2d 525 (1980). The administrative record must permit meaningful judicial review. Therefore, if the missing documents are immaterial to the ALJ's decision, or not relied on in his opinion, a remand would not be warranted. *Brady v. Apfel,* 41 F.Supp.2d 659, 668 (E.D.Tex.1999). However, when the ALJ's findings were derived from the information that the Commissioner failed to include in the record, the court cannot conduct the meticulous examination of the record required by law. *See Pace,* 893 F.Supp. at 21.

In the case of *Booker v. Massanari,* Case No. 00–1141–WEB (D. Kan., recommendation and report, Sept. 25, 2001, adopted by district court, Oct. 22, 2001), the ALJ's findings were based on information contained in two exhibits. However, only portions of one exhibit were contained in the record, while no part of the other exhibit was contained in the record. The court held that because the ALJ relied on documents not contained in the record in making his findings, and they were therefore material to the ALJ decision, the case was remanded for further hearing *(Booker,* report and recommendation at 8–11).

In the case of *Rogge v. Barnhart,* Case No. 01–1383–WEB (D. Kan. recommendation and report, Nov. 27, 2002, adopted by district court Jan. 13, 2003), MRI results relied on by the ALJ and material to his decision were not contained in the record. Therefore, the court held that it could not conduct the meticulous examination of the record to determine if the MRI test results supported the findings of the Commissioner, or if they supported the findings of Dr. Hart, whose opinions the ALJ had discounted (Dr. Hart had opined that plaintiff's spinal disorder prevented the plaintiff from working). The case was therefore remanded due to this and other errors in the case *(Rogge,* report and recommendation at 6–9).

In the case of *Johnson v. Barnhart,* Case No. 03–1115–JTM (D. Kan. recommendation and report, April 30, 2004, adopted by district court, May 24, 2004), missing from the record was an RFC assessment setting forth claimant's mental limitations. This assessment was relied on by the ALJ when questioning the vocational expert (VE); furthermore, the ALJ's RFC findings matched the limitations that the VE indicated were on the assessment. The record was silent as to the source of that assessment. The court held that the missing document was clearly material to the ALJ's decision. The court also held that without a copy of that document or any information as to the source of that document, the court could not conduct the meticulous examination of the record required by law. Therefore, the case was remanded for further hearing *(Johnson,* Doc. 16 at 8–9).

In the case of *Burton v. Barnhart,* Case No. 06–1051–JTM, 2006 WL 4045937 (D. Kan. recommendation and report, Oct. 13, 2006, adopted by district court, Nov. 1, 2006), the ALJ determined that the 1st state agency assessment was entitled to no weight. However, the court found that it was impossible to exercise meaningful or informed judicial review of the weight that the ALJ gave to a medical opinion because 4 of the 8 pages are missing from the assessment. Therefore, the court held that the case would be remanded in order for the ALJ to obtain the missing pages of

the assessment. 2006 WL 4045937 at *5 *(Burton,* Doc. 12 at 11).

In the case presently before the court *(Hill),* the ALJ gave "substantial weight" to the opinions of the state agency medical consultants (R. at 30–31) when establishing plaintiff's RFC, including Exhibit 11F, a physical residual functional capacity assessment (R. at 30, 250–256). The ALJ stated that the consultants "provided specific reasons for their opinions," and that their opinions were "grounded in the evidence of record, including careful consideration of the objective medical evidence and the claimant's allegations regarding symptoms and limitations" (R. at 30).

Exhibit 11F, as contained in the record, includes 7 pages (R. at 250–256). On page 7 of the document, it indicates that there is an 8th page (R. at 256). However, no page 8 appears in the record, and R. at 257 is missing. Taking judicial notice of the physical RFC form used in this case, the court referenced this same form contained in *Money v. Astrue,* Case No. 06–1348 *(Money,* R. at 251–258). The 8th page of the assessment form in *Money* has space for "Additional Comments" and includes the signature and date of the medical consultant's report *(Money,* R. at 258). That last page of the assessment is missing in the case presently before the court *(Hill).* Thus, the court does not have before it the complete assessment, including additional comments by the consultant, if any, or the name or signature of the consultant and the date of the consultant's report. As was the case in *Burton,* the court does not have before it all the pages of the assessment that the ALJ relied on in this case in making his RFC findings. Therefore, this case will need to be remanded in order for the ALJ to include in the record the missing page of the assessment (Exh. 11F) so

that the court can engage in meaningful judicial review.

The record in this case also contains the medical records from Via Christi Rehabilitation Center (R. at 303–333, Exh. 20F). The ALJ repeatedly referenced portions of this exhibit in his decision (R. at 26, 27, 31). However, this exhibit is missing R. at 318, 320, 322, 324, 326, 328, 330 and 332. The ALJ indicated that "the physical therapist who administered the FCE [functional capacity evaluation] reported that the claimant self limited in almost all categories, consistently exaggerated her pain, and did not give full effort" (R. at 27, citing exhibit 20F/147–149, 157). The ALJ later cited to this document in finding that "despite self limiting behavior, the claimant demonstrated no difficulty using her hands or fingering during the FCE (exhibit 20F/148) showing that she has no manipulative or handling limitations" (R. at 31). In both cases, the ALJ's citation includes a specific reference to page 148 of exhibit 20F, which he relied on in making his decision. However, page 148, or R. at 320 is not included in the record.[2] Given that the administrative record must permit meaningful judicial review, and that the ALJ's findings were derived from information which the Commissioner failed to include in the record, the court cannot conduct the meticulous examination of the record required by law. Therefore, the case should be remanded in order for the defendant to include in the record complete copies of Exhibits 11F and 20F.

## IV. Did the ALJ err in his analysis of the opinions of Dr. Seifert?

Plaintiff was referred by rehabilitation services to a licensed psychologist, Dr. Seifert, for a psychological assessment (R. at

---

**2.** The record includes R. at 319 (marked as page 149 on the bottom of the page) and R. at 321 (marked as page 147 on the bottom of the page). However, the record does not contain page 148, or R. at 320.

18). In his decision, the ALJ stated the following concerning the opinions of Dr. Seifert:

> **Dr. Seifert stated that he did not believe that the claimant was employable considering her impaired intelligence and severe mental illness.** He noted that the claimant did not know the colors of the American flag, past presidents, or the shape of a ball (exhibit 5F). Dr. Seifert also noted that the claimant was will[ing] to take psychotropic medication, which she later demonstrated an unwillingness to do, at least as prescribed. The claimant told Dr. Seifert that she did not attend special education classes and had a C average in school. Dr. Seifert noted that the claimant's distant memory was only mildly impaired, but the claimant was often vague and unclear (exhibit 5F/24). Dr. Seifert is not a treating source. During the evaluation with Dr. Moeller, the claimant was able to state the colors of the flag and name past presidents. Furthermore, the claimant has shown an unwillingness to take psychotropic medication as prescribed or pursue counseling. **Dr. Seifert administered IQ testing, which was admittedly invalid, but did not give MMPI testing to assess the validity of the claimant's subjective reports. Dr. Seifert's opinion appears to be based almost entirely on the claimant's subjective statements and evaluation performance, which have been consistently shown to be not credible, and therefore is not entitled to substantial weight. The undersigned has given greater weight to the opinion of Dr. Moeller, because this opinion takes into consideration MMPI–2 testing and a comprehensive review of the record, and is thus based upon evidence not available to Dr. Seifert.**

(R. at 28–29, emphasis added).

In his psychological evaluation, Dr. Seifert indicated that he performed a number of tests, including the MMPI–2 (R. at 187). His report then states the following:

> Personality Assessment—**There was a massive elevation on the F Validity Scale of the MMPI–2 which can variously factor in limited intelligence, self-depreciation, and distorted reality. We have to interpret results cautiously considering her impaired intelligence, but the global indicators are fairly consistent with the history.** On the clinical side, there were massive elevations, in descending order, on paranoia, schizophrenia, depression, hypochondriasis, psychopathic deviancy, psychasthenia, and hysteria; social introversion was moderately elevated. The K Validity Scale was very low and indicates that defenses are inoperable and not containing surplus stress and anxiety. **Her own report is consistent with the MMPI–2 elevations (reality loss, paranoia, depression, a history of antisocial behavior, broken relationships, obsessive thinking, and preoccupation with physical ailments).** The diagnostic impression, Schizoaffective Disorder, is offered for consideration. This diagnosis includes Major Depression and Schizophrenia.

(R. at 190, emphasis added). Thus, the court finds that the ALJ decision incorrectly asserted that Dr. Seifert did not give MMPI testing to assess the validity of plaintiff's subjective reports. Dr. Seifert administered to plaintiff an MMPI–2 test; he found that the global indicators were "fairly consistent with the history" (R. at 190), and also found that plaintiff's own report "is consistent with the MMPI–2 elevations (reality loss, paranoia, depression, a history of antisocial behavior, broken relationships, obsessive thinking, and preoccupation with physical ailments)" (R. at 190). Thus, Dr. Seifert did not rely almost entirely on plaintiff's subjective statements, but performed MMPI testing

and found plaintiff's reports and history were consistent with the MMPI testing. The court finds that the ALJ erred by relying on erroneous representations of Dr. Seifert's report to discount the opinions of Dr. Seifert. Therefore, this case shall be remanded in order for the ALJ to give proper consideration to the report of Dr. Seifert, including his interpretation of the MMPI–2 testing of the plaintiff.

Defendant, in their brief, indicate that the ALJ, at the hearing, stated that Dr. Seifert, a doctor of education, administered an MMPI–2 test and interpreted the results, but that he is not qualified to do so (Doc. 10 at 19); according to the ALJ, it takes a PhD psychologist to administer MMPI–2 testing (R. at 364). First, this statement at the hearing does not negate the fact that the ALJ decision relied on inaccurate or erroneous representations of Dr. Seifert's report; i.e., that Dr. Seifert did not give MMPI testing to assess the validity of plaintiff's subjective reports.

Second, various sources indicate that the ALJ incorrectly asserted that Dr. Seifert was not qualified to administer and interpret an MMPI–2 test because he did not have a PhD in psychology. Dr. Seifert's report indicates that he has a doctorate in education, that he has a specialty certification in psychology (ABPP, American Board of Professional Psychologists, www.abpp.org, Sept. 27, 2007), and that he is a licensed psychologist (R. at 191, 187). The Health Psychology and Rehabilitation website states the following about who is qualified to purchase an MMPI–2 exam: "Licensed psychologist or graduate degree in psychology and psychometric training" (http://www.healthpsych.com/testing/testing.html, Sept. 27, 2007). A second source indicates that the MMPI should be "administered, scored and interpreted by a clinical professional trained in its use, preferably a psychologist or psychiatrist" (http://www.healthatoz.com/healthatoz/Atoz/common/standard/transform.jsp?

requestURI=/healthatoz/Atoz/ency/psychological—tests.jsp, Sept. 27, 2007). A third source states that the MMPI should be administered, scored, and interpreted by a professional, preferably a clinical psychologist or psychiatrist, who has received specific training in MMPI use (http://psychology.about.com/od/psychological testing/a/mmpi.htm, Sept. 27, 2007). The undisputed evidence in this case is that Dr. Seifert is a licensed psychologist and has a speciality certification with the American Board of Professional Psychologists (ABPP), and there is no evidence in the record that Dr. Seifert is not trained in the use of the MMPI test. The ALJ, contrary to the various sources cited above and without any citation to authority, stated that Dr. Seifert is not qualified to administer and interpret an MMPI–2 test because he does not have a PhD in psychology. In the absence of any authority for his assertion, and in light of the authority cited above, the court finds that the ALJ's assertion that Dr. Seifert is not qualified to administer or interpret an MMPI–2 test does not provide a reasonable or valid basis to discount the opinions of Dr. Seifert.

## V. Did the ALJ err in his analysis of the opinions of Dr. Brewer, plaintiff's treating physician?

In his decision, the ALJ stated the following concerning a "Statement of Medical Condition" contained in the record:

> **Roslyn Welch, PA–C, completed a form for State assistance on December 27, 2004 reporting that the claimant's major depression with psychotic features and ADHD were severe and persistent and not controllable by medication or other treatment.** Ms. Welch stated that these impairments caused functional limitations precluding competitive employment and requiring

ongoing psychiatric or psychological treatment. **She stated that the claimant had extremely poor concentration and attention span, persistent fatigue and sadness, paranoia, and ideas of reference** and was unable live independently. **She stated that the claimant needed, but could not afford, home nursing for medication management. Another signature page with Dr. Brewer's signature dated November 19,2004 was also submitted. It is unclear which medical source completed this statement. Ms. Welch is not an acceptable medical source as defined by the regulations and her opinion is not entitled to controlling weight.** The evidence shows that the claimant has never consistently taken psychotropic medication as prescribed to determine its effectiveness and was not referred for therapy due to her lack of confidence in the system. The claimant is able to maintain an independent living arrangement. She stated that her boyfriend manages her medication and she discontinued home health services (exhibit 17F/126). **There is no evidence that the claimant requires home nursing care in order to take medication. These statements are not supported by the medical records from Comcare and thus have not been given controlling weight. They are not supported by the overall medical evidence and thus not given substantial weight.**

(R. at 29, emphasis added).

First, defendant has failed to properly organize the medical record in this case. The record contains two "Statements of Medical Condition" (R. at 211–217, 218–224). Both statements indicate that there are 8 pages to each statement. The way the record is organized, no page 8 appears after the 1st Statement of Medical Condi-

tion (R. at 211–217), but two page 8s appear after the 2nd Statement of Medical Condition (R. at 218–224, 225, 226). Both page 8s have the signature of the person preparing the report (R. at 225, 226). Thus, in referencing the 2nd Statement of Medical Condition (R. at 218–224) at R. at 29 (quoted above), the ALJ indicated in his decision that two signature pages appear after it, that of Ms. Welch (R. at 225), and that of Dr. Brewer (R. at 226).

The 1st Statement of Medical Condition is signed and dated by the plaintiff on December 27, 2004 (R. at 212). The signature of Ms. Welch is also dated December 27, 2004 (R. at 225). The 2nd statement of Medical Condition is signed and dated by the plaintiff on November 19, 2004 (R. at 219). The signature of Dr. Brewer is also dated November 19, 2004 (R. at 226). Thus, it appears that the defendant misplaced the signature page of the 1st Statement of Medical Condition, causing confusion to the ALJ and to the court. It appears that Ms. Welch prepared the 1st Statement of Medical Condition, which relates to plaintiff's physical limitations (R. at 211–217, 225),[3] and that Dr. Brewer prepared the 2nd Statement of Medical Condition, which relates to plaintiff's mental limitations (R. at 218–224, 226), and which is discussed by the ALJ at R. at 29, quoted above. Thus, the analysis by the ALJ concerning both Statements is clearly marred by the confusion in the record concerning the source of each Statement.

Second, the ALJ found that the statements made in the 2nd Statement of Medical Condition "are not supported by the medical records from COMCARE" (R. at 29), and thus were not given controlling or substantial weight. However, this finding by the ALJ is not supported by the evidence in this case. For example, Dr.

---

**3.** The ALJ, at R. at 30, discusses the 1st Statement of Medical Condition, stating that it is

unsigned. However, it appears that this Statement was in fact signed by Ms. Welch.

Brewer indicated in the 2nd Statement that plaintiff suffers from extremely poor concentration and attention span, paranoia and ideas of reference (R. at 224). The records from COMCARE, signed by Dr. Brewer, indicate the following:

May 27, 2004: OBJECTIVE DATA: ... Concentration was poor ... (R. at 198)

Sept. 23, 2004: OBJECTIVE DATA: ... Concentration was poor ... (R. at 196)

Nov. 19, 2004: OBJECTIVE DATA: ... At this point, there is some indication of some paranoid type thinking which she describes as feeling like she's watched a lot and feeling like people are pointing at her out to get her. Concentration remains extremely poor and it takes her three or four minutes to come with the date and she just doesn't track well and only seems to take in about half of what is said to her ... (R. at 194)

Jan. 13, 2005: OBJECTIVE DATA: ... She does acknowledge some paranoid delusions and feeling like people are talking behind her back and spying on her. Concentration remains pretty poor, perhaps a little better than last visit but she generally doesn't track very well and only seems to take in about half of what is said to her ... she is definitely showing cognitive limitations ... (R. at 296)

July 28, 2005: OBJECTIVE DATE: ... She does acknowledge that she continues to be paranoid a lot with some persecutory delusions and ideas of reference. Concentration remains very poor and she doesn't track very well and seems very forgetful and has to be reminded of things and comprehension remains somewhat diminished ... these cognitive limitations have been pretty persistent and about the same presentation with all the visits that I have had with her for the last year or so ... (R. at 293)

Nov. 18, 2005: OBJECTIVE DATA: Remarkable for restricted affect and poor concentration (R. at 290).

The court finds that Dr. Brewer's opinions in the 2nd Statement that plaintiff suffers from extremely poor concentration and attention span, paranoia and ideas of reference are amply supported by his own treatment notes for 2004 and 2005.

Dr. Brewer, in the 2nd Statement of Medical Condition, asserted that "Patient needs home health nursing to manage her medications at home, but has no insurance" (R. at 224). The ALJ stated that there "is no evidence that the claimant requires home nursing care in order to take medication" (R. at 29). However, the COMCARE records signed by Dr. Brewer on Nov. 19, 2004 (the same day he signed the 2nd Statement of Medical Condition) indicated that he was trying to keep her medication regimen simple, and had written instructions out on a piece of paper and that, hopefully, with the help of her granddaughter, plaintiff would be able to take the medication as prescribed. Dr. Brewer then stated that: "I told her I would be glad to refer her to home health nursing to help her manage her medications at home if she is able to obtain Medicaid" (R. at 194). On January 13, 2005, Dr. Brewer indicted that plaintiff would be referred to Home Health Nursing to help her manage her medications at home now that she has Medicaid (R. at 296). On July 28, 2005, Dr. Brewer's treatment notes indicate that plaintiff had been off her medications for several months and that compliance with medications had been very difficult for her, in part because she is ambivalent about taking her medications but also because she is so low functioning and has trouble remembering to take her medications consistently (R. at 292). Thus, the evidence from Dr. Brewer's treatment records provides clear evidence

that plaintiff requires home nursing care to take medication.

The ALJ also asserts that the statements in the 2nd Statement of Medical Condition by Dr. Brewer are not supported by the overall medical evidence. However, the evaluation by Dr. Seifert, states that plaintiff has "considerable problems with concentrating and attending and I have already noted a deficiency in her distant memory" (R. at 190). As noted above, Dr. Brewer repeatedly noted plaintiff's extremely poor concentration and attention span. Dr. Seifert also opined that the prognosis for successful vocational activity for the plaintiff was judged to be poor due to her mental impairments (R. at 191). This is entirely consistent with the opinion of Dr. Brewer that plaintiff has severe and persistent mental illness, not controllable by medication or treatment, causing severe functional limitations precluding competitive employment (R. at 223). Thus, on remand, the ALJ shall give proper consideration to the opinions expressed by Dr. Brewer and Dr. Seifert. The ALJ shall also take into consideration the areas of agreement or consistency in the opinions of Drs. Brewer and Seifert when making a determination of the weight that should be accorded to their opinions.

**VI. Did the ALJ err in various findings at steps two, three and four of the sequential evaluation process, including the RFC findings?**

■ The court will not address these issues in detail because a proper evaluation of the opinions of Dr. Seifert and Dr. Brewer, and the inclusion of the missing portions of Exhibits 11F and 20F could impact the analysis of many of these is-

sues. *See Robinson v. Barnhart,* 366 F.3d 1078, 1085 (10th Cir.2004). However, at step two, the plaintiff must keep in mind that she must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir.1997). Furthermore, plaintiff must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c), § 416.912(c). The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists. 20 C.F.R. § 404.1513(a), § 416.913(a). Evidence from other medical sources, including therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work. 20 C.F.R. § 404.1513(d)(1), § 416. 913(d)(1).

■ In this case, there is a wide variety of opinions regarding plaintiff's mental and physical limitations. In regards to plaintiff's physical limitations, although plaintiff argues that greater weight should have been given to the opinions of Drs. Smith, Stein and Wood (physicians whose opinions predate the alleged onset date),[4] Dr. Eyster, plaintiff's treating physician, stated on June 20, 2005 that plaintiff is released to work without any physical restrictions (R. at 267). However, the ALJ found that due to plaintiff's back and neck

4. It appears from the record that these physicians were primarily consulting/examining physicians, although the record indicates that Dr. Smith prescribed medication and physical

therapy (R. at 175). Plaintiff's brief describes Drs. Smith and Stein as "examining physicians" (Doc. 7 at 24).

pain, he found that plaintiff had some physical limitations (R. at 29), and adopted physical RFC findings consistent with those set forth by the state agency medical consultants (R. at 24–25, 30–31, 250–256). So long as there is evidence in the record to support the findings of the ALJ, the court cannot reweigh the evidence nor substitute its judgment for that of the agency. *White v. Barnhart,* 287 F.3d 903, 905, 908, 909 (10th Cir.2002).

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.